O
JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

BRANDON LEE,

                 Plaintiff,

      v.

FAIRFIELD PROPERTIES, LP,

               Defendant.

Case No. 2:12-cv-06202-ODW(SHx)

**JUDGMENT**
(ECF No. 10)

## I.    INTRODUCTION

Before the Court is Plaintiff Brandon Lee's Motion for Default Judgment against Defendant Fairfield Properties, LP.  (ECF No. 10.)  The Clerk entered default against Fairfield on October 5, 2012.  (ECF No. 8.)  Fairfield has yet to appear in this case and did not oppose Lee's Motion for Default Judgment.[1]

## II.    FACTUAL BACKGROUND

On May 10, 2010, Lee toured Emerald Terrace, an apartment building managed by Fairfield.  (Compl. ¶¶ 6–7.)  Lee alleges that at the time of the tour, apartment management knew the building was infested with bedbugs but hid this information from him.  (*Id.* ¶ 7.)

On June 6, 2010, Lee entered into a lease agreement with Fairfield, moved into

---

[1] Having considered the papers filed in support of this Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

his new apartment, and within three days began to suffer from insect bites.  (*Id.* ¶¶ 6, 8.)  Lee shortly discovered that these bites were the result of bedbugs and reported this to management.  (*Id.* ¶¶ 8–9.)  Management sprayed Lee's apartment, replaced his carpeting, and cleaned his apartment thoroughly to remove the bugs but to no avail.  (*Id.* ¶¶ 10–13.)  Lee's request to switch into another apartment unit was denied.  (*Id.* ¶ 10.)  For four months after management cleaned Lee's apartment, Lee experienced no bedbug problems.  (*Id.* ¶ 11.)  But during that period, Lee caught over 14 mice in his apartment and brought the new problem to management's attention.  (Lee Decl. ¶ 12.)  Yet Lee believed that the pest problems subsided by February 2011; and because it was convenient to do so, he renewed his lease in May 2011 for another year.  (*Id.* ¶ 14.)  Lee then departed for a study-abroad program in May 2011.  (*Id.*)

Upon Lee's return, he started to get bedbug bites again.  (*Id.* ¶ 15.)  The bedbug problem continued throughout this renewed lease term despite repeated sprayings by Terminix.  (*Id.* ¶ 16.)  Lee attempted to find other people in Emerald Terrace who were affected by similar pest problems, but management's attorney threatened him with eviction for "'harassing' and 'interfering' with other tenants through [his] posting of flyers at the apartment complex."  (*Id.* ¶ 20.)

As a result of the bedbug and mice infestations, Lee suffered from insomnia, which forced him to take Ambien and melatonin to sleep.  (*Id.* ¶ 16.)  Furthermore, Lee was inconvenienced by having to move his belongings in and out of the apartment when the sprayings occurred.  (*Id.* ¶¶ 10, 16.)  He also experienced social and professional embarrassment and frustration due to his bug bites and inability to have guests visit his apartment.  (*Id.* ¶¶ 10, 22–23.)  Lee finally moved out of the apartment in July 2012.  (*Id.* ¶ 21.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the Clerk's entry of default under Rule 55(a).  Federal Rule of Civil Procedure 55(b) and Local Rule 55-1 require that applications for default judgment set

forth (1) when and against what party the default was entered; (2) the identification of the pleadings to which the default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Service Member's Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2).

The district court is given discretion to decide whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, a defendant's liability is conclusively established, and the well-pleaded factual allegations in the complaint—except those pertaining to damages—are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). But in exercising its discretion to enter default judgment, a court must consider several factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Still, a court may not enter a default judgment for money until plaintiff proves his damages, unless "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). A plaintiff may accomplish this, without a hearing, by submitting declarations—so long as notice of the amount of damages sought is served to the defaulting party. L.R. 55-2.

## IV.   DISCUSSION

In light of the seven *Eitel* factors, the Court finds that all factors favor Lee, except for the fourth and fifth—that is, Lee seeks a large sum of money under the

circumstances, and there is a possibility that the infestations were caused by Lee himself.  Nevertheless, Lee's motion papers, pleadings, and supporting declarations provide sufficient evidence to support his Motion for Default Judgment.  The Court awards damages for Lee in accordance with the discussion below.

**A.    Rent**

Lee seeks compensation for his entire two years of rent in the amount of $21,939.52.  (Lee Decl. ¶ 26.)  The Court declines to award Lee the full amount requested because he had several ways to mitigate his damages but failed to do so. When a landlord breaches the implied warranty of habitability and creates an untenable property, as is alleged here, a tenant may repair the problem himself and deduct the costs of repair from future rent as long as notice is first given to the landlord.  Cal. Civ. Proc. Code § 1174.2.  Alternatively, the tenant may terminate his lease, vacate the premises, and raise breach of the warranty as an affirmative defense in a later unlawful detainer by the landlord for failure to pay rent.  *Id.*; Cal. Civ. Code § 1942(a).

In this case, Lee did none of the above.  In fact, none of the facts Lee provides to the Court illustrate any attempt to mitigate his damages.  He even renewed his lease for another year, which leads the Court to believe that the apartment was not in as bad a condition as Lee claims.  (Lee Decl. ¶ 14.)  Lee also fails to demonstrate that the repeated bedbug and mice infestation occurred through no fault of his own.  If Lee was responsible, he would be obligated to resolve the issue himself.  Cal. Civ. Code §§ 1929, 1941.2.  Notwithstanding the issue of Lee's culpability, the fact remains that Lee failed to minimize his losses, retained possession of the apartment, and reaped the benefit of staying.  As such, the Court declines to award him any damages related to rent.

**B.    Out-of-pocket expenses**

Lee requests a total of $1,850 for pesticide, hotel, and medication costs he incurred while living at Emerald Terrace.  (Lee Decl. ¶ 26.)  However, Lee submits no

evidence to the Court that these expenses actually occurred (e.g., receipts).  Despite this lack of proof, the Court awards Lee $350 to compensate him for the pesticides he purchased and the hotel room he rented while his apartment was being sprayed for bedbugs.  The Court declines to award Lee $1,500 for his medication since he fails to explain how he came to this number.

## C.   Personal injury

The largest amounts Lee seeks stem from personal injury—specifically the insomnia, disfigurement, inconvenience, and social and professional embarrassment and frustration he experienced as a result of Fairfield's failure to remedy the bedbug and mice infestation in his apartment.  (*Id.* ¶¶ 26.)  But again, Lee fails to provide the Court with any basis for the damages he presents; his statements regarding his personal injuries are conclusory and speculative.  It is difficult for the Court to believe that Lee was harmed in an amount equal to $98,420 for his past and future non-economic damages since he remained in his apartment for two years and continued on with his MBA program at the USC Marshall School of Business.  (*Id.* ¶¶ 2, 14, 16, 26.)  For instance, Lee submits no medical reports relating to his alleged injuries; and he offers no evidence that he even visited a doctor to examine the extent of his injuries.  Yet, the Court finds that Lee suffered some injury as a result of Fairfield's failure to maintain a habitable apartment.  Therefore, the Court awards Lee $5,000 for this category of damages.

## D.   Punitive damages

Lee also seeks punitive damages as a result of Fairfield Property's fraudulent concealment, breach of the implied warranty of habitability, and negligence.  (Compl. 7; Campbell Decl. ¶ 7.)  But Lee offers no evidence that Fairfield acted recklessly, maliciously, or oppressively towards Lee.  *See, e.g.*, *Rivera v. Sassoon*, 39 Cal. App. 4th 1045, 1047 (1995) (affirming punitive damages award based on landlord's oppressive and malicious conduct towards his tenants by failing to keep the building free of rats, termites, and other pests, among other building and health code

violations); *see Dang v. Cross*, 422 F.3d 800, 805–806 (9th Cir. 2005) ("You may award punitive damages only if you find that defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights."). Accordingly, the Court declines to award punitive damages.

**E.  Attorney's fees**

Lastly, Lee requests an award of attorney's fees. (Compl. 8.) Where a contract allows for the recovery of reasonable attorney's fees, those fees shall be calculated according to the schedule provided under the Rule. L.R. 55-3. This schedule establishes that a reasonable attorney's fee where the judgment is between $1,000.01 and $10,000 is equal to $300 plus 10% of the amount over $1,000. *Id.* In this case, Lee's rental agreement allows the prevailing party in a legal action related to the agreement to recover attorney's fees. (Lee Decl. Ex. A.) And because Lee's damages amount to $5,350, he is entitled to $735 in attorney's fees.

## V.  CONCLUSION

For the foregoing reasons, Lee's Motion for Default Judgment is **GRANTED**. (ECF No. 10.) Judgment is hereby entered against Fairfield in the amount of $5,350 plus $735 in attorney's fees. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

November 5, 2012

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**